Case numbers 21-1810 and 21-1836. S2 Yachts Inc v. ERH Marine Corp. Oral argument not to exceed 15 minutes per side. Ms. Kratz, you may proceed for the appellant. Good morning. Good morning, Your Honor. Sabrina Kratz on behalf of Defendant Appellant Cross Appellee, ERH Marine Corp. I would like to reserve five minutes over bubble time. Very well. Your Honors, as directed by this court, I would like to start off with the business defamation claim. I do believe it's probably one of the most pertinent issues since the Michigan Court of Appeals and Michigan Supreme Court have not addressed the district court's application of the economic loss doctrine to the divided business defamation claim. So, in doing so, the court actually, the district court relied on the Nyberger matter to say that because the parties could have contemplated S2's conduct at the time of the contract that the economic loss doctrine barred ERH's claim of damages. Because, I mean, the court said because they could have foreseen this sort of thing. Correct. Go ahead. Any questions are more than welcome. So, in this case... So, no court has, to my knowledge, applied, I mean, no Michigan court certainly has applied the economic loss doctrine to a defamation claim. They have not, not in this matter. I mean, the Michigan courts have actually, since the Nyberger case came out, I believe in 1992, the courts have actually moved toward when you have an intentional act, such as fraud and the inducement, like here on an electorate, that those can't be contemplated by the contract. And so, therefore, the economic loss doctrine would not prohibit those types of claims. Now, this gets a little confusing because we have a cross appeal. You're arguing that the doctrine does not apply here. Correct, Your Honor. You're representing ERH. Correct. And we had brought a counter complaint of including business defamation, which had been dismissed on summary judgment. Can I ask you, the strongest argument against you seems to be that this is inextricably intertwined with the contract. In other words, the statements were about payment on the contract or down payment or whatever it was for the votes. And as Judge Murphy pointed out recently, Michigan seems to interpret this broadly than others. So, I mean, I agree with you there. I agree with Judge Kevlage. This is a hard road for your friend on the other side. But wouldn't that be their best argument? And what's your response? So, it's not intertwined. And here's why. So, the course of dealings for 20 years with these two parties as to bills, votes in the state of Michigan, my client, ERH Marine Corps, sells boats to clients in the Dominican Republic. They actually started their business relationship in approximately 2002. And so, we have contracts that were renewed and new contracts that were initiated. And I believe this contract that's at issue today is from 2015, which was extended. Now, under the parties' course of dealing, what would happen is ERH would get an order from a customer, submit that order. That order would be acknowledged. But let me ask you this. Let's assume it's true for a second. If someone called and said, where's my boat? Let's say they ordered it through ERH like occurred here. And they called S2, right? They met someone from S2 like occurred here and said, where's my boat? And they said ERH didn't make the down payment. That would be intertwined with the contract, right? No, because we have an instance in where less areas who made that statement knew that the order had been made. No, I said if the statement was true. It still wouldn't be because it's an instance where they're making statements that are about, they're making statements about S2's content, S2's how they do business. And Michigan case law has said when you're talking about how, or excuse me, ERH's business, and when Michigan case law has established that when. So, I call, let me give you a hypo. I work with a local Ford dealership to get an F-150. They say it's delayed. We haven't heard anything from Ford. I call my friend at Ford and I say, why haven't my car been produced? And they say, the dealer didn't send the down payment on your car. Is that tied, that's not tied to the contract? So, it's the dealer's contract with the supplier. That's in the contract. But when they're making a statement to you, you're not a party to the contract. And so, that dealer is then talking about the Ford dealer's order rather than. Did you read Judge Murphy's opinion in, it's called Crossing at Eagle Pond? I did not, Your Honor. Okay. Go ahead. Sorry. Oh, no. And so, to further kind of elaborate, when we have less areas talking about how ERH is doing business to a third party, not part of the contract, but never have been contemplated by ERH and S2 at the time of contract formation, that how ERH does business is that's where you get the separation. And I do understand the panel's questioning regarding how it could be intertwined. But because of less areas' knowledge that these orders have been placed, that they have been acknowledged by S2, and then making statements to third party customers about S2 or ERH, how they do business, that's where we get into the defamation claim. It seems like one can distinguish between Ares' statement to DiPino and then his statement to Ricard, however you say that guy's name. I mean, DiPino, he, Ares apparently just says, well, we didn't get a deposit, so, you know, we're not going to, that's why we didn't start building the boat. And that seems like a true statement. I mean, they didn't get a deposit, right? They didn't get a deposit, but it's because S2 never requested the deposit. The course of dealings with the parties were ERH would submit an order, that order was acknowledged, which is not disputed, and then S2 would then send ERH the order verification form and request the deposit. We have a situation where they never did those two. No, I understand your argument. I mean, I mean, now you're getting into interpretation of contract a bit, and, I mean, course of dealing is sort of a little bit analogous to legislative history. I mean, I don't mean that to be a pejorative here, but we don't worry about course of dealing unless there's something we can't figure out with the contract itself. Right. That's the way I remember the code, UCC, et cetera. And I say, go ahead. No. Well, I apologize for interrupting, Your Honor. I just wanted to explain, the reason I say course of dealings is because we do have an ambiguity in the contract here. See, on that point, I'd like to understand maybe better your argument as to why, because the contract seems pretty straightforward as to when an order happens and when it doesn't. And, I mean, it says that all orders submitted will be subject to pursuant to written acceptance. And then it says that complete specifications are not submitted with the order. The order will not be accepted, nor will the production slot be reserved. And at least as to some of these orders, it seems like those requirements on this record weren't met. And that's just, I don't know, it seems cut and dry. What am I missing? Well, see, the allocation of production slots, there's no criteria for that included in the contract. Well, it says they can do whatever they want. They're sort of given absolute discretion. Is that, but, you know, just, I mean, like dealers always want, you know, product, at least when they can't get enough of it. And that's one thing. But this case seems to be more about when an order happens as opposed to, you know, hey, you're giving this dealer way more than you're giving us. So, I mean, like some of these they didn't have the color. They didn't have all the specs. So how was there actually an order under the terms of the contract? And that's where Becky Chek's acceptance of the order and giving up anticipated production date of February of 2018, that's where that comes into play, Your Honor. So you say, what was the written acceptance in your view? Was it like we accept your order or was it the sort of leading ERH on that, oh, we're going to get this done for you at a certain time? It would be when ERH submitted the orders in July of 2017 and then Becky Chek confirmed and acknowledged those orders and saying that here's your production date, you're going to receive them in February 2018. And normally what would happen is an order verification form and request for deposit would come out in December 2017, January 2018. Do you happen to have a page ID number for the communications that you're referring to just so I can get on the same page? And if you don't, Andy, you can just tell us and we'll follow up. The emails I'm referring to, I believe, Your Honor. You can do it on your phone. Okay. I mean, because your red light's on. Right. Just, you know, take a look. Okay. And then you can tell us when you come back. Will do. Thank you, Your Honor. Thanks. Good morning. Good morning, Your Honor. Rachel Conyers on behalf of S2 Yachts. Your Honor, as we jumped right into ERH's business defamation claim and the economic loss doctrine, I feel that's where we should start this morning. And so that's where I will begin. First of all, the district court judge did get it correct that the economic loss doctrine does operate. Are you saying that they had to negotiate a defamation clause into the contract? I'm not, Your Honor. What I'm saying is the defamation claims, when you look at them, which, first of all, ERH points to three declarations by these customers, which I would like to remind the court were stricken in a motion that we filed with the district court. Well, let's just talk about whether the doctrine applies. Okay. Because I'm skeptical it does. Nobody's done this ever, to my knowledge. So why is this the first case? So the doctrine applies, Your Honor, because as Your Honor's pointed out earlier, you can't have these defamation claims that we have in this case without discussing the contracts. So if you and I have a contract and I come visit you and say you haven't paid me for the boats and you get angry and punch me, is that covered? If we're in a dispute about the contracts and that's what we're discussing, it could be. So you have to include assaults in the contract? I think that the economic loss doctrine should be applied when you are looking at economic losses. When a company such as ERH is making a claim to recover economic losses based on a commercial transaction, that tort, they can't recover under both tort and contract law. Well, I mean, let's say a dealer and a manufacturer have a feud and someone from the manufacturer goes and burns down a warehouse of the dealer because they have this long-running dispute about a contract covered by economic loss. I think if you can show that they were so intertwined and that dispute was showing that there was a contract issue. I mean, there have been tons and tons of contracts and people disagreeing and so on. I mean, do you have any court ever that applied the economic loss doctrine to defeat a defamation claim? Not a defamation claim. I mean, that's a lot of crickets for a long time in an area that, you know, if it applied, you know, you'd probably, you know, we'd have some case from someone. Understood, Your Honor. But when you're looking at the defamation claims in this case, they are undoubtedly tied to not only the contract but the obligations that ERH says that S2 owed ERH underneath the contracts. And so once you take out the arguments regarding the contract, ERH doesn't have anything left to talk about with respect to defamation. I know this is a binding on Michigan, but doesn't the restatement say they're not covered too? I don't believe the restatement says that defamation claims are not covered by the economic loss doctrine specifically, Your Honor. How does it make any sense here? I think the principle under Nyberger is that dual recovery, duplicative recovery, is not allowed, that for a breach of contract, the UCC is the exclusive source of damages and that those damages are adequate to cover defective products. And that's what it was in Nyberger, it was a defective smoking machine. Here you have tort damages for defamation, and it's hard for me to see how contract damages could cover the tort damages here, how you could say we have to apply the doctrine so you don't get extra double recovery. And so tell me how UCC contract damages would provide a remedy for the tort of defamation. Because the contract that's discussed in the declarations, Your Honor, which has already been ruled on, the declarations are talking about the dealer termination, essentially, is what ERH is arguing and saying. Because our dealer relationship was terminated, there was business defamation, nobody wants to do business with us in this context anymore. And the lower court, as well as this court, already determined that the dealer termination was proper. Well, it wasn't, it was not just the termination, it was that they were allegedly lying to the customer by saying that the order had been placed when it hadn't, or at least the confirmation order had not. Right, that was one declaration, Your Honor. Yeah, and perhaps the statement about the deposit was accurate, although it was taken out of context, I think it was misleading. But, I mean, their damages are for their loss of business reputation in the community, above and beyond just the economic damages of no longer being the dealer, the ramifications it has long term for selling other boats for the community. I just, I don't see how contract damages provides a remedy. And just like the punching the nose case, I mean, you say that would be covered? I mean, it's awfully hard to believe that UCC has damages that compensate for that. You don't get to the contract damages, though, Your Honor, without discussing the obligations set forth in the contract. It's not what the doctrine says. The doctrine doesn't say if the contract is somehow a relevant fact with respect to a claim, ergo economic loss doctrine. The doctrine applies when the parties have already agreed to a certain allocation of certain risks in the contract, and then tort law would reallocate those same risks. That's the logical reasoning which is wholly absent here. So I guess my last question for defamation is for the other statement, not to DePino, but to the other person where they say, you know, we didn't get any orders and we got no deposits. You know, why isn't there a genuine issue of material fact there as to whether that was misleading or untrue to the detriment of the dealer? So that was a substantially true and factually accurate statement, Your Honor, as we discussed the contract. It's sort of misleading. Well. I mean, if we want to, like, you know, flyspeck the contract, one can make an argument. Right. You know, and I talked earlier about the provisions, but, you know, it's leaving a customer with the impression that the dealer has been totally derelict with respect to this boat and that the dealer has not been telling the customer the truth. And, I mean, that could be quite damaging to a dealer's reputation, particularly in a closed community. So why isn't that, you know, why doesn't that create a genuine issue? So, again, Your Honor, because when you look at the language in the contract and what was required, what Mr. Aras said to the customer was absolutely true, that no order had been placed and a deposit hadn't been received. So when you go back to the agreement, what it says is ERH has to submit a completed order verification report. They have to accept and verify that report and submit a 20% free production deposit. Those things didn't happen here, which is why this report found that there was not a breach with respect to those boats. And so saying that that didn't occur, I think, is accurate, Your Honor. I understand that argument. I mean, I guess, you know, my concern is that notwithstanding, I mean, I totally get that argument. But I think you're talking about a layperson customer who's not read the contract. And I think the clear impression is, you know, your dealer hasn't done anything. We don't really know what you're talking about. And that's a misleading impression and query whether that creates a genuine issue as to the defamation claim. So, Your Honor, with respect to the defamation claim, even getting out, stepping outside of the economic loss doctrine, we have the requirements that need to be met, right? The first is that the statement was false and defamatory. And when you have substantial truth, which is what we just discussed, there was truth within the things that Mr. Ares told the customer. That's an absolute defense to business defamation, first and foremost. Second of all. Is there a case that says it's an absolute defense even when it's misleading? I don't know about the misleading part, Your Honor. That's the part I'm asking about. We did cite to a case there in our brief. And then when you get to the second prong, the communication has to be an unprivileged communication to a third party. ERH hasn't shown that here. There's a self-interest privilege that's operating in the background of the commentary that was made by the S2YAS representative. And to defeat that qualified privilege, ERH has to show, again, that the statement was false and made with actual malice. There's absolutely no proof and no evidence of those things occurring with respect to the statement that S2YAS representative made. Well, malice is normally an issued fact, isn't it? It is, Your Honor, but there was no facts up for it even to show. And ERH disagrees that there was malice in the statement. The other appeal you had was regarding the service fees? Correct, Your Honor. And with respect to that, we're just disputing the measure of damages there. You admit that service fees are a consequential damage? We don't believe that consequential damages should have been awarded in this instance, Your Honor. You believe that service fees are a measure of consequential damages? I believe they can be only if it's shown that they were contemplated by both of the parties at the time the contract was made. You started by saying you dispute the amount. We do. That's correct, Your Honor. You agree that some amount was probably part of it? With respect to damages for the DC-295 but not consequential. So that's the differentiation. There were damages awarded for direct damages as well as consequential in that figure that was provided or that was ruled by the district court. And so we're just disputing the consequential damages piece because there was no proof to issue an award on consequential damages. Disputing the whole amount. Okay. All right. Go ahead. It seems like it's plainly contemplated by the contract itself, which requires that they have a service department for these boats that get sold. Correct, Your Honor. But when you look at the parties contracting, there's no evidence that they both determined that S-2 would take on responsibility for ERH's post-sale business operations. When you take a look at the evidence… I don't follow. I mean, the point is S-2 requires them to have a service department for S-2's boats that get sold. So obviously the parties are contemplating that they'll be servicing the boats that they sell. And it would seem obvious as well that everyone knows they're going to make a profit on that servicing. So this is clearly foreseeable and indeed foreseen consequential damages. With respect to this specific customer, though, Your Honor, there's no evidence that they had obtained such services or contracted with ERH to get such services in the past or that they intended to do so in the future. The only statement is by Mr. Hernandez. Judge Yonker, after a bench trial, decided there was enough. It's not a terribly demanding standard on this, and Judge Yonker decided that there were going to be some. Actually, it seemed like it was pretty favorable toward your side as to the amount. He did decide that there were going to be some, Your Honor, but we still think there was insufficient proof to make that determination first. Don't we review this for abuse of discretion? I'm sorry, what was that? Don't we review it for abuse of discretion? We do. So, I mean… We don't think that there was sufficient proof, though, to even make a finding of one year's worth of services. Mr. Hernandez testified that sometimes some customers get services after they, you know, purchase the boat. But here, there's not even a determination as to what services he would purchase, when he would purchase them, how often. I mean, there's no evidence in the record of any of those things. So it's just a random award, if you will. It's a very tough road for you on this and on economic loss. This is $16,000 we're talking about. Right, Your Honor. I mean, I'm just totally speaking for myself. Have you all talked to our mediation office? I mean, you're here fighting about $16,000 on this claim. One wondered, I mean, you know, have you talked to her, maybe tried to work this out? We have not, Your Honor. You know, fighting about $16,000, you know, at this point. Understood. We will. You know, I'm not dictating anything, but we have a great mediation office. It might be worth talking to them and seeing if you could just work this out. Okay. Thank you, Your Honor. I just want to go back to the economic loss doctrine for a second, because even if that doesn't apply, even if this court determines it doesn't apply, I just want to highlight and reiterate the fact that ERH still has to meet the standards and necessary elements to prove a business defamation claim. And they've submitted absolutely no admissible evidence to support a claim like that in this case. Was the defamation claim knocked out before the non-jury trial? It was, Your Honor. All right, so they were, I guess maybe you're saying they didn't present evidence in opposition to the summary judgment against them. Correct, Your Honor. So for the motion for summary judgment, they still had to provide admissible evidence that they relied on. But the ruling actually isn't on the basis of inadequate evidence. It's on the basis of a matter of law here. Is it not so the factual matters you're asking for really are the subject of the judge's ruling here, are they? I see that I'm out of time, Your Honor. But I do believe that the issue has to do with the fact that they didn't submit admissible evidence because the declarations were stricken. So during that ruling… To Judge Griffin's point, can I follow up? Yeah, sure. He didn't make that finding, right? All he made is the economic loss doctrine for this claim. So he didn't make that finding because he struck the declarations, which were the evidence that ERH was pointing to, prior to ruling on the motion for summary judgment. So he did adopt the economic loss doctrine, Your Honors, but I'm saying he did not consider the declarations. They were stricken prior to granting the motion. We could remand him. Judge Yonker knows what he did and didn't do. Very good judge. He can figure that out. I think Judge Yonker got it right the first time, Your Honor. So you are entitled to remand. But I do believe Judge Yonker saw that the economic loss doctrine accurately applied because the contract was so inextricably intertwined with the business defamation claim here. And I also believe that Judge Yonker saw… Where in Nyberger does it say that? Nyberger says… …that if the tort claim is intertwined or whatever, is that the… I don't think that's the holding of the case. So where is that in the opinion? Because I don't see it. It's not in Nyberger. Nyberger stands for the economic losses. Nyberger… Okay. We, as a Sixth Circuit Court of Appeals, in a diversity case, have to apply the state law as we would determine the Supreme Court of that state would apply it. Although we could look to lower court decisions, Michigan Court of Appeals decisions, they're not binding on us. Okay. So you're saying you don't have a Michigan Supreme Court case in support of your… What do you think is the holding? We don't have a Michigan Supreme Court case, Your Honor. Those are just Michigan Court of Appeals cases that deal with the… And district court rulings that deal with the intertwined contract language in a business defamation case. Okay. All right. Any further questions? No. All right. Thank you. Thank you. We'll have five minutes for both. Thank you, Your Honors. Acknowledging that I went a little bit over previously, I'll try to keep this as brief as possible. Your Honor, answering your question regarding where in the record that email correspondence is, I'm going to look at R110-31, which is page ID 4745. Okay. Thank you. R110-32, page IDs 4746 through 4756, and R110-33, which is page ID 4757 through 4764. Okay. These are email correspondence between the parties regarding the orders and submitting the orders and acknowledging them. Thank you. The matter of mediation has been brought up, so this matter has not gone to the mediation office. Is that correct? Not in the Sixth Circuit. We have mediated at the lower court level. In your view, would there be a possibility that mediation would be beneficial in this case or not? Quite frankly, Your Honor, I have not discussed continued mediation with my clients at this level, so I unfortunately don't have a good answer for you. I would like to briefly discuss the qualified privilege argument that was brought up. I'd like to point out that actually in S2's briefing for this matter, this was the first time that was ever argued. It wasn't brought up in affirmative defenses or in prior briefing, and so there's, quite frankly, a new issue. Usually you can't bring up new stuff here, but I don't know what the state of the record is. Understood, Your Honor. I just wanted to point that out. Yeah, I know. It's on you. But anyway, I don't know what the record says. Yeah. Additionally, there's absolutely no evidence in the record that Lacerde has attempted to make these arguments in good faith. When he confirmed the orders, the S368 orders himself, and knew of the orders. So when he knew that these orders had been made and he's making these statements to a layperson, as Your Honor pointed out, that doesn't know terms of a contract and, quite frankly, wouldn't, this is something that he's making with, I would contend, malicious intent to say, hey, ERH never made your orders and never submitted your orders and kept your deposits. Do you have any case that you could direct us to for the proposition that a statement that is technically true as a legal matter is not outstanding defamatory because it's misleading to the recipient of the statement? Is there any authority for that proposition?  That's all right. Okay. Can I ask you about the consequential damages? Yes. I think you object, if I remember correctly, to him only giving one year. Is that right? Correct, Your Honor. Isn't it? I mean, it is abuse of discretion. His opinion after the bench trial seemed pretty thorough. I mean, does he have to give all or nothing? Is that the proposition you're pushing for? No, but we do contend that Mr. Hernandez, who gave the testimony, was found as credible by Judge Yonker, and he gave a calculation as to why he, as to the amount, which we claimed 7.5% of the MSRP of the vote. He said that that was an approximation of how much the service fees would be for docking, additional maintenance. And as this Court has pointed out, the service provision of the 2015 pursuits agreement required that ERH provide service for the vote. And, in fact, if they wanted somebody else to do it and subcontract it out, they had to get prior permission to do so. But am I wrong about this? So he says, but the Court did not find the basis in the record to use the full retail price in the calculation in his testimony, Mr. Hernandez. And he goes on to detail why he's doing one year. I mean, if we look at that and say, this is a discretionary call, he went through and gave his reasons, how is it an abuse? I understand, Your Honor. First, when Judge Yonker, he used what he determined to be the value of the vote, which I believe is 214, so approximately 234,000. And so we contend that when Mr. Hernandez was testifying about the value of the vote, he was talking about the retail or MSRP. But then he also approximated that there would be approximately five years' worth of services provided for these votes. I mean, there's no evidence in the record to suggest that it would only be one year. He said there was no proof presented at trial relating to how many years a DC-295 might require maintenance, nor was there testimony about the length of time. I mean, he goes through all that, and he says there wasn't evidence of this. I understand, Your Honor. Okay. All right, any further questions? Nope. All right, thank you very much. Thank you very much. The case will be submitted.